Good morning, Your Honors. May it please the Court, I'm Robert Morris on behalf of Matthews International Corporation. Today I'm going to focus on three different reasons that the Board's decision below should be reversed. First is claim construction. The Board got it wrong by equating functional limitations with intended use. They're not the same thing. Second, even with the Board's incorrect construction, each and every structural element is found in the prior art that's in the claims. And the Board's requirement that we have to show that the, quote-unquote, casket body is capable of containing the remains of the deceased can be done using common sense as in the perfect web decision. And I'll explain that further. And that third, even if those two arguments fail, the evidence that we submitted with our motion for judicial notice satisfies any evidence deficiencies that the Board found. Because the same examiner, when he was examining a case that had substantially the same claims, found that both Gros and Watson were both capable caskets, considered to be caskets, capable of containing the remains of the deceased. With regard to claim construction, the PTAP committed clear and reversible error in the claim construction of casket body, which this independent claims 1 and 14 are both apparatus claims. They have three structural elements. That's what the Board found. The Board agreed with us that the wherein clause was not a structural element. Therefore, the only structural elements are the bottom panel, the side panels, and the end panels. Patent owner, in addition, in its brief, stated repeatedly that the casket body is not functional. If you look at Vander's brief on page 12 and look at Vander's brief on page 13, they went out of their way to say that it was structural, not functional in any way, shape, form, or size. The key in the Board's decision below where they really went off the rails was at the very beginning. They said, quote, and this is in the appendix in the final written decision, page 22, when evaluating the prior art, we consider the claim term casket body to be an intended use or a functional limitation. Our inquiry remains essentially the same. And that's simply wrong. It's not the same thing. There's two different bodies of law. One has to do with functional limitations. One has to do with intended use. Is your view that if they had treated it as intended use, it wouldn't have any weight at all? Is that your view? That's what we basically said in our briefs. I mean, it has weight. It's an intended use. It just doesn't carry a lot of weight. It's not patentably distinct. I mean, the law in intended use says you can't take an old product and say I'm going to use it in another way, and all of a sudden that becomes patentable. If I take the claims, for example, that are written with regard to the fact that it says a casket body, and I replace the word casket with toy box and say it forms a toy box body because now I'm going to put toys in it. Well, it has to be capable of the intended use, doesn't it? It's structural. It's, in this case, all the structural limitations. If it's an intended use, it has to be, as I understand the case, the prior art has to be capable of that intended use. Even if it has to... The prior art may have had, in fact, a different use, but in order for it to anticipate, it has to be capable of the intended use, right? It's, as you set forth in your center cut decision, sometimes the technology issue is so simple, and this goes to the common sense argument... You've shown that, and whether you needed to have expert testimony. I'll put that aside for the moment. Sure. But the legal standard is, if you have a structure in the prior art that is used for a different purpose, that it will anticipate if it's capable of the intended use specified in the patent claim, right? There are... I don't understand. What's wrong with what I said? Anticipation is found when all the structural elements are found. If intended use and functional capability are the same, then what you said is 100% right. Then you're saying that somehow the casket body has a function. The casket body is supposed to do something. In this case, the casket body is a box. Can a box contain something? A box can contain something. Actually, okay, so I understand, just to make sure I understand what you're saying. The PTAB at pages 18 and 22 of the record has limited along the lines that it has to be capable of containing a deceased, and you're challenging that, saying that that's structural. I do not fully understand your position either. The PTAB in its decision to institute made a finding that the casket body is not structural. In the final written decision, I believe on page 22 to 23, it said that the term casket body is entitled to patentable weight and that the apparatus must have structure capable of such use, because it's functional, or it's intended use, or it's whatever it is. They mix the two up. Let's assume that we think that the capable of use is the right standard. My understanding is that you say under the claim construction, this casket can be used to hold a small child who's deceased or a pet, and that the two prior art references which show boxes, like the boxes claimed here, for an ice chest or a dough pan, are on their path for a small child. Am I correct in what you're saying? Yes, Your Honor. Essentially, it would be inherent, if you want to go down that path, that a box is inherently capable of containing whatever you put in it. Did you argue inherency before the PTAB? We didn't argue inherency before the PTAB. We argued that the boxes were identical. The expert testimony that was submitted was that the boxes were boxes and that the boxes were boxes in the prior art. Dr. Karvales submitted an expert declaration. He testified to that fact. I didn't see Dr. Karvales ever testify that when he looked at the boxes disclosed in Grow or Watson, in his opinion, those boxes were capable of serving as caskets in the sense that those boxes, given what they were designed to accomplish, would likewise be able to accomplish the capability of serving as a casket for an infant or something else. I didn't see that in his declaration because his declaration was purely predicated on believing that the word casket is not even meaningful in the claim. Then when he got to the deposition, I didn't see him make any connection between the boxes disclosed in Grow or Watson with the claim limitation of a casket that's capable of holding the deceased. You're 100% correct, Your Honor. Excuse me? You are 100% correct. Okay, and so that's, I think, ultimately what the Board's concern was, is that your case, it was your burden to connect the dots, to explain what it is about Grow's box or what it is about Watson's box that specifically, given the disclosure of those two references, teaches the size of a box that can serve as a casket for a deceased. Instead, as I understand it, you had one sentence in your reply that says, it is clear that human infants can fit into an ice chest-sized container, and that's not even referring to Grow's ice chest container, and it's not at all discussing the disclosure of Grow, and I think, therefore, it was the Board's concern that there needed to be at least some more reasoning provided on your part to make the case for why either Grow or Watson's containers can serve as a casket, given that the understanding of casket is not just a box, any box, but it's got to be a box that can serve as a casket for a deceased. The Board construed deceased to include pets, so a deceased can be a mouse, a deceased can be a gerbil, it can be a hamster, it can be an infant. Are there any caskets on the market for mice? I honestly can't say I've looked at them. Goldfish or crickets or anything like that? Well, when my daughter's pet bird dies and I go and I buried it in a shoebox, and the specification of the patent talks about a shoebox functioning like a shoebox. But that's more about the elements of the panels and things like that. It's not referring to shoebox in the context of a shoebox can serve as a coffin or casket. When I go to the container store and I ask, hey, do you have a casket here? Are they going to say, yeah, look around. You're surrounded by caskets right now. They very well might. I don't know who I'm going to talk to. They may say, well, we have boxes over there, and if you want to bury a dog, you can take that box and you can use it as a casket because it's a box. What about the patent's continual references to deceased in the specification? And then when you look at the dictionary definition, deceased is referencing a dead person. Sure. And then the board ultimately said that the construction they like is a container capable of holding a deceased. But then they took the extra step and then said deceased is something that's beyond just the dictionary definition, dead person, but it's also dead animals. It seems like there's a missing or there's a gap in that reasoning to do a construction of a construction, i.e., the meaning of the word deceased, and expand it to include almost any live animal that becomes dead. We had introduced evidence of pet cemeteries. We introduced evidence of pet caskets. The fact is that you can go on the Internet and you can buy pet caskets. You can order a pet casket. You can have a pet casket delivered to you. I assume that if you go to any of those companies, you can get a pet casket for a mouse. If that's the size of the casket that you want to order. I'm just concerned that in the context of this patent, you and the board have construed the term casket to mean literally any box that's ever been made. I mean, is a garbage can a casket? Is a garbage dumpster a casket? It's capable of containing, I guess, a human or a mouse. If it's a simple and organized crime, that would agree with you, if that's the case. A little tiny jewel box? I mean, is that a casket? I guess it could be, under your definition. You could fit a tiny little pet. Is there any part of record in this case that actually is directed to a casket, where the reference itself refers to itself as a casket? I believe that there was. I believe that there's one that sort of looks like a Dracula's coffin, that's shaped sort of angularly this way, and then it goes this way. And that gets to, I believe it's claim 13, that has the asymmetric handholds. That one literally looks like a casket. There's supports inside, so that the handholds... Was he relied upon his own at all, for any claims other than claim 13? Was that in the petition for re-hearing, for any claims other than claim 13? I don't remember, Your Honor. I've gone over the record pretty deeply, and there's a lot of paper, and I just don't have that at my fingertips at the moment. The essence of the invention, if you want to get to what it is that we're talking about... We'll give you two minutes for a bubble, okay? Okay. Thank you, Your Honor. May it please the Court, my name is Harold Moore, and I represent the Appellee and Cross-Appellant to the Extent of Claim Construction, Vandua Corporation. Let me tell you, this is kind of an odd case, because you have these prior art cardboard caskets to be used with humans. And it might seem obvious to someone to combine those with the particular folding properties of the dough box or the ice chest. But that wasn't argued as a ground for unpatentability in the course of this proceeding. You have a case in Indiana, an infringement case, against the appellant here. What are we going to see if you win here, hypothetically? What are you going to argue is the estoppel? For them raising a combination of these cardboard caskets with the folding properties of this other art? Are they foreclosed from doing that in a district court case? What's the situation? I would argue that they are precluded from making that argument, because that argument could have been raised in this proceeding. And I know there's limitations to the estoppel, but that's the deal that is made by the accused. So basically you're saying they can't argue unpatentability or invalidity in the district court? That's how I would see that coming out. And if they did and they brought that obviousness argument, if for some reason the estoppel didn't work or didn't apply, we would then be able to bring our own evidence that it would not be obvious to convert those two things into caskets. But your argument is that they can't raise it at all because of estoppel. I think the estoppel law seems, with all due respect, is evolving as we go forward. It's just being tested on different levels, and I understand that there may be ways they can bring other obviousness arguments. But we would argue that, yes, they had the chance to bring an obviousness argument. They made a decision that's all we can defend. If they brought it in front of the board, then we would have had to defend it there. But they made the decision that they weren't going to bring it. And so I would say that they're stopped from bringing it now in district court and having a second bite at the apple. Hey, we're going to try this way, whether it's for expense or some other reason, that they just wanted to go with the anticipation. Maybe they thought it was an easier way to go, but they made a decision. And we would expect the estoppel rules to work out the way they were intended, which is if you're going to make the patent owner defend and spend a lot of money defending their patent before they even get to their time in front of an Article III judge, then you're going to have to suffer the estoppel. What if, hypothetically, I thought that in light of the prior art of human cremation cardboard boxes and Groh and Watson, it'd be painfully obvious to apply the total properties of Groh and Watson to a preexisting human cardboard box casket? What would your response be to that? Well, I would say that my client's been involved in this business for a while. And this invention, you know, we would introduce evidence, of course, to say that there was a long-felt need. And it has enjoyed commercial success. It wouldn't have been so obvious. People just didn't look around at other boxes because caskets have certain requirements as to... Well, there's no question there were cardboard caskets before. I have two examples of them here. The only difference is the folding properties, the way it's folded, right? That's correct, Your Honor. But if we took each one, if we took Watson, it's not corrugated. It's a small thing. Who knows how that would translate into something that was a casket size. You know, maybe it would work, maybe it wouldn't. But we would suspect that there was a reason why, you know, there's an infringement case pending. And there's a reason why we're not seeing on the market devices like Rowan Watson. You know, you talk in your brief as though a casket is something that is designed to encompass a dead body. But a casket could also be the cremated remains of a human or perhaps a pet also, right? Well, our interpretation is the interpretation we try to advance is it's capable of reasonably fitting a dead human. Yeah, but what about a cremated human? Oh, once they're cremated. And we did try to make that distinction. So it would only have to be big enough to contain the ashes, in your view, of a cremated human, right? Is it casket or is that an urn? That's what I think the question is. Yes, and we, in our proposed interpretation, tried to make sure that we mentioned that we gave the impression a dead person is the person that's still there. You've answered my question. Is a casket that contains the cremated remains of a human a casket? No, that's referred to as an urn in the industry. How do we know that? We could, you know, again, I've represented this client. I know that there are urns and caskets and I would... No, but I mean, do we have a dictionary definition that tells us that? I would say the dictionary definition for casket is, well, a coffin, which is where we're equating the casket. A casket is a fancy coffin and a coffin is something that contains a dead person. And we wouldn't consider cremated remains is not ordinarily considered to be a dead person or a dead, you know, dead body. It's something, it's cremated remains. And so that's what we found in the dictionary. We've never, I've never seen in the market or in the prior art that's been, or either of the experts say that cremated ashes are something you can put in, cremate ashes into, is a casket. Or one of ordinary skill in the art would think that was a casket. Do you have a dictionary definition of that? Of urn or casket? Casket, which would include cremated remains. In our opening Pat Nona response, I believe we gave the dictionary definition. And if I read it. 1511. With the pages of 1511. In the dictionary definition, as I recall, and we're going to pull it up, there was something to imply again that it's a body. Are you relying on, there's a dictionary definition that the board refers to on page 23, appendix page 23, which is page 23 of the board's opinion. I don't know if that's the definition you're referring to. It's around the middle of the page. Board's opinion, page 23. A coffin, yeah, a box in which a dead person is buried. Well, that doesn't say it's the body as opposed to the cremated remains, right? In our, again, it becomes how do we define a dead person that's buried? Is a person a more or less intact body? Or is it cremated remains? It's a very, it almost gets to the philosophical level. But clearly, in the context of the patent, you can obviously make an urn very small. And the entire patent is about reducing the size of large, large objects. And so I would say somebody reading the context of the patent would consider deceased, casket, dead person to be an intact. Well, there's nothing in the specification that excludes cremated remains, right? There's nothing that affirmatively excludes cremated remains. I agree. I wanted to bring up Claim 3 and 14. The board found distinct factual findings on Claim 3 separate from Claim 1. Matthews has waived any argument that the finding of no invalidity with at least Claim 3 and 14. And it did not dispute the board's findings. Only with respect to Claim 1 is it under, was underlying Claim 3. But we made separate arguments for each, for several independent claims. The board addressed one. The board said that Matthews failed to show that, for other reasons, their modification was not a design need. And that their modification would have ruined the prior art for its intended purpose, would have defeated its intended purpose. They have not, in their opening brief, they didn't argue against that in any way. And it's waived. Would that be a remand to the board to consider, since they didn't rule on that particular ground? Or would that be a reversal? Well, Claim 3 in particular would be an affirmance, because they made a specific factual finding. On Claim 3? Yes. And Claim 4 depends from Claim 3. And also Claim 14. There was a specific factual finding that has nothing to do with the definition of casket or casket body. And they declined, Matthews declined to address that. Therefore, those issues are waived. There's, I would say on our cross-appeal that there is evidence that we intended, that the intention was that the casket was for receiving a deceased, and a deceased being a deceased human. Sometimes in these patents, it's always an effort to present these matters that touch everybody with a little bit of delicacy. Do you have, by the way, a cross-appeal on that ground? That is not a proper cross-appeal. That's an alternative ground for defending what happened. Correct, Your Honor. I apologize for misstating it that way. We did want to raise the issue in the event that there is a remand, that we would want to be able to press that issue with the Board. If we were to correct the claim construction in your way, it would necessarily still result in an affirmance. Correct. The Board has broadly, we think more broadly, interpreted deceased. If the claim interpretation was changed to mean a container capable of receiving a deceased, meaning a deceased human, that is narrower. If the Board did, if the, Matthews did not provide sufficient evidence to show that a human or a pet could be contained within the prior art Groen-Watson, they certainly didn't show that the Groen-Watson could contain only a person. Okay. Thank you. Thank you. Mr. Morris, you have a couple minutes. Your Honors, Mr. Moore and I finally agree on something. He said, quote, the entire patent is about reducing the size of large objects. That's what this is a patent for. This is a patent about, this is an invention about trying to take big boxes that you can't store and you can't ship and it's too difficult in making them smaller. It was a very clever, very clever idea. You basically take it. You have the upper, you have the lower parts of the sides and the end panels. You fold them all in. Everything's compact. It's cut in half. You can now ship twice as many in every truck that you ship. Wherever you're sending them, they can store twice as many until you want to do it. The people don't have to take flat cardboard dies and fold them all up. The claim was allowable and there were claims that were allowed that had no body in it at all. The examiner on the intrinsic record specifically stated that you're missing a body and you need to form a body. And then just by appending the word casket in it shouldn't give it some kind of magical connotation. A box is a box and it's still just a box. And that's what the invention's about. And it was a very clever invention. Their only problem is somebody else came up with a structurally identical patent first. Is it possible if you go forward and you affirm the board's claim construction and you affirm the board's decision, does that mean that we can get out of infringement from now on by just labeling every box that we send out as a box? Because we're not going to call it a casket anymore. And that can't be the law. It just can't be the law. If it is the law, that's great. I'll take that on the record and then we don't have to go to the district court to litigate because I'm done. Because we will label every single thing that goes out as a Matthews box. We won't call them caskets. We won't talk about anybody for caskets. If somebody says they want a casket from us, we'll tell them we sell boxes. And we'll sell them a box. And they can put whatever they want in the box. Okay. Thank you, Mr. Morris. Thank you, both counselors. Please just admit that. Thank you.